[No. B212585. Second Dist., Div. Six. Aug. 23, 2010.]

JESSICA MORTON et al., Plaintiffs and Appellants, v.
THOUSAND OAKS SURGICAL HOSPITAL, Defendant and Respondent.

928

## COUNSEL

Phillipi & Nutt, Steven J. Renshaw and Steven V. Phillipi for Plaintiffs and Appellants.

Beam, Brobeck, West, Borges & Rosa, Fredrick M. Borges, John E. West, Andrew W. Salmond and Glen A. Stebens for Defendant and Respondent.

## OPINION

**PERREN, J.**—In *Thing v. La Chusa*, our Supreme Court narrowed its holding in *Dillon v. Legg* and limited the scope of claims for negligent infliction of emotional distress (NIED).[1] Its avowed purpose in doing so was to "avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread . . . ." (*Thing, supra*, 48 Cal.3d at p. 664.) In this action for NIED purportedly arising from medical malpractice, appellants seek to expand the scope of liability which our Supreme Court sought to limit in *Thing*. They allege that, at the time of their mother's postoperative treatment, they were "experienced in the medical field and understood and appreciated the dangers faced by their mother" in the event remedial action was not taken. We agree with the trial court that

---

[1] *Thing v. La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814] (*Thing*); *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912] (*Dillon*).

this allegation is insufficient to establish that appellants knew and appreciated the medical circumstances affecting their mother. (*Bird v. Saenz* (2002) 28 Cal.4th 910, 917–918 [123 Cal.Rptr.2d 465, 51 P.3d 324] (*Bird*).) As we shall explain, their complaint failed to satisfy the second prong of *Thing*'s three-prong test for liability based on a theory of NIED.

Jessica Morton and Holly Brooks appeal from the judgment of dismissal entered after the trial court sustained a demurrer to their cause of action for NIED. We affirm.

*Factual and Procedural Background*

Appellants' mother underwent "a sigmoid colon resection" for recurrent diverticulitis and "bilateral salpingo-oophorectomy" at Thousand Oaks Surgical Hospital (hospital). During the surgery, her bowel was nicked. In the days following the surgery, with her family at her hospital bedside, the mother's condition worsened, and she fell into a coma. The mother later recovered and was released from the hospital.

Appellants, their mother, and their father filed a complaint against the hospital and the mother's physicians. The mother alleged a cause of action for medical negligence. Her husband alleged a cause of action for loss of consortium. Appellants alleged a cause of action for NIED. Here, we are concerned only with the daughters' allegations.

Appellants were not present during the surgery and concede they cannot make a claim of NIED arising from it. Rather, they focus on the period of postsurgical recovery. They claim it was during this time that a second episode of malpractice occurred. Appellants allege that the physicians and hospital staff "negligently and carelessly . . . failed to respond to signs and symptoms of a bowel leak or perforation and post-surgical sepsis." They allege they saw "their mother deteriorate, suffering from signs and symptoms of peritonitis," and "beseeched" the hospital physicians and employees to "obtain a surgical consult and conduct additional tests on their mother as [she] was physically deteriorating, not making urine, unable to breathe, sweating, and becoming confused." They allege they "are experienced in the medical field and understood and appreciated the dangers faced by their mother in the event no curative action was taken." They allege awareness "that their mother was suffering and deteriorating as a result of Defendants' medical neglect, but were unable to do anything but plea[d] with Defendants

to respond to their mother's needs." They allege they "developed severe depression, anxiety and emotional distress as a result of having witnessed the ongoing deterioration of their mother's health due to medical inattention, despite their continued pleas for assistance on her behalf."

The hospital demurred on the ground that the facts alleged in the complaint did not satisfy the elements of an NIED claim under *Thing*. Specifically, the hospital asserted that appellants had failed to allege facts showing they were present at the scene of the injury-producing event when it occurred and that they were contemporaneously aware it was causing injury to their mother. The hospital argued that where only the victim's suffering is observed without actual observation of the event that allegedly caused the suffering, there is no recovery for NIED. The hospital added that appellants, as laypersons, could not have perceived its alleged failure to diagnose and treat the peritonitis. Finally, the hospital argued appellants could not amend their cause of action to satisfy the requisite elements of an NIED claim and urged the court to sustain the demurrer without leave to amend.

In opposition, appellants acknowledged they did not witness their mother's surgery during which her bowel was perforated, but maintained that this did not preclude them from stating a cause of action for NIED. They argued there were "two injury-producing events." The first was the surgical damage to their mother's colon, while the second was "defendants' post-operative failure to recognize and respond to their mother's steadily worsening condition, and dismissing and ignoring [their] requests and pleas for medical intervention." Relying upon *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1] (*Ochoa*) and *Bird*, appellants, without elaboration, argued that their "experience in the medical field" distinguished them from the typical layperson unable to understand the significance of postsurgical medical events.

Appellants argued that with their medical experience, they "did have reason to know that their mother was suffering post-operatively, and did have reason to know that the failure of defendants to respond and react to the signs and symptoms of peritonitis was causing her harm."

In reply, the hospital pointed out that appellants did not allege what type of "medical experience" they possessed above and beyond that of a layperson which enabled them to believe their mother was deteriorating as a result of medical neglect. The hospital argued appellants were relying upon the postoperative effects of an already existing injury which they concede they did not witness.

The trial court sustained the demurrer, reasoning that appellants were not present at the injury-producing event, nor were they aware that the event was causing injury to their mother. The court stated: "[H]ere plaintiff daughters claim they were nevertheless present at the time of the alleged post-operative failures to treat (creating a tort recovery for them but not for non-medical expert relatives), putting us in a 'Twilight Zone' of special treatment that seems contrary to sound public policy. What about the self-proclaimed expert who has studied up on Wikipedia? What about the med school drop-out? What about the phlebotomist who works at a hospital and has some sense of proper treatment but no formal training? Whose relatives can state a cause of action and whose cannot? The daughters' theory is not a sensible extension of what began as *Dillon v. Legg* bystander liability, which contemplates a universal horror shared by everyone." Appellants' counsel declined the court's invitation to amend the complaint.

The court entered judgment dismissing appellants' action against the hospital.

## Discussion

Appellants contend they stated a cause of action for NIED based on defendants' postoperative failure to respond to their mother's steadily worsening condition despite their pleas for medical intervention. They argue they were present at the scene of a second injury-producing event (i.e., medical neglect), and their experience in the medical field enabled them to perceive "the dangers faced by their mother in the event no curative action was taken."

In reviewing an order sustaining a demurrer without leave to amend, we exercise our independent judgment on the question whether the complaint states facts sufficient to constitute a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We review the denial of leave to amend for abuse of discretion, reversing only if there is a reasonable possibility that a defect can be cured by amendment. (*Ibid.*)

In *Dillon*, our Supreme Court permitted a mother to recover damages from a negligent motorist for the emotional distress she suffered as a consequence of witnessing the accident that caused the death of her child. Equating the

duty to avoid causing emotional harm to bystanders with the foreseeability they might suffer such harm, the court articulated a set of guidelines to aid in the resolution of the issue of duty in bystander recovery cases.[2] Duty would be owed if, in light of the expressed guidelines, the accident and harm were reasonably foreseeable. (*Dillon, supra*, 68 Cal.2d at p. 741.)

■ Realizing that the *Dillon* guidelines had produced arbitrary and conflicting results, and "ever widening circles of liability," the Supreme Court refined the elements of duty in Thing. (*Thing, supra*, 48 Cal.3d at pp. 653, 661–662.) The court observed that "reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited." (*Id.* at p. 664.) The court held that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person, if he or she "(1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs *and is then aware that it is causing injury to the victim*; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Thing, supra*, 48 Cal.3d at pp. 667–668, italics added, fns. omitted.)

In *Thing*, the plaintiff neither saw nor heard the defendant's car hit and injure her child. The mother only became aware of the injury when someone told her it had occurred. She then rushed to the scene to see her child lying unconscious and bleeding in the road. The Supreme Court held the plaintiff could not state an NIED claim because she was neither present at the scene of the injury-creating event when it occurred nor contemporaneously aware that it was causing injury to her child. (*Thing, supra*, 48 Cal.3d at p. 669.)

In *Bird*, the plaintiffs sought to recover damages for NIED based on medical malpractice suffered by their mother. The plaintiffs had brought their mother to the hospital for chemotherapy. During the surgical procedure to

---

[2] The *Dillon* court stated that in determining whether a defendant should reasonably foresee the injury to the plaintiff, or owe the plaintiff a duty of due care, "the courts will take into account such factors as . . . (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Dillon, supra*, 68 Cal.2d at pp. 740–741.)

insert a venous catheter, an artery was pierced, which led to severe internal bleeding. The plaintiffs heard a call for a thoracic surgeon, saw their mother being rushed by medical personnel to another room, heard the doctor's report of the mother possibly having suffered a nicked artery or vein, and then saw their mother being rushed into surgery. The plaintiffs conceded they were not present at the scene of the transection of their mother's artery. They argued, however, they were aware their mother's artery or vein " 'had been injured as a result of Defendants' conduct . . . and that Defendants failed to treat that injury while it was occurring.' " (*Bird, supra*, 28 Cal.4th at p. 917.) The Supreme Court rejected their argument, concluding they had not shown they were contemporaneously aware of any error in the subsequent diagnosis and treatment of their mother's transected artery. The court stated: "The problem with defining the injury-producing event as defendants' failure to diagnose and treat the damaged artery is that plaintiffs could not meaningfully have perceived any such failure. Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders. . . . Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event—the transected artery—had occurred, they had no basis for believing that another, subtler event was occurring in its wake." (*Ibid.*)

The Supreme Court went on to observe that "[t]his is not to say that a layperson can never perceive medical negligence, or that one who does perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury causing effects, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally." (*Bird, supra*, 28 Cal.4th at p. 918; see also *Golstein v. Superior Court* (1990) 223 Cal.App.3d 1415 [273 Cal.Rptr. 270] [trial court properly sustained demurrer to NIED claim alleged by parents who witnessed their child receive a lethal overdose of radiation; while they observed the procedure that was later determined to have been an injury-producing event, they were not then aware the treatment was causing injury].)

In *Ochoa*, a case predating *Thing*, a boy confined in a juvenile detention facility died of pneumonia after authorities ignored his obviously serious symptoms, which included vomiting, coughing up blood, fever, and excruciating pain. His parents visited him in the infirmary, saw the child in great pain, repeatedly requested increased medical care, and were finally forced to

leave the facility without treatment being delivered. The Supreme Court permitted the parents to sue as bystanders for NIED. In *Bird*, the court analyzed its holding in *Ochoa* and explained, "The injury-producing event was the failure of custodial authorities to respond significantly to symptoms obviously requiring immediate medical attention. Such a failure to provide medical assistance, as opposed to a misdiagnosis, unsuccessful treatment, or treatment that turns out to have been inappropriate only in retrospect, is not necessarily hidden from the understanding awareness of a layperson." (*Bird, supra*, 28 Cal.4th at pp. 919–920.)

Analogizing their case to the facts of *Ochoa*, appellants contend they have experience in the medical field and are not laypersons, and thus the negligent omission—the failure to react and respond to the signs and symptoms of peritonitis—was not hidden from their understanding awareness. Although this case does not present the precise example posed by the Supreme Court in *Bird*—a layperson watching as a relative's sound limb is amputated—they argue it does involve the failure to provide medical assistance contemplated by *Bird*, and thus presents facts constituting the cause of action left standing in the wake of *Ochoa*, *Thing* and *Bird*. We disagree.

*Ochoa* relied upon the *Dillon* guidelines to support an NIED cause of action. The *Dillon* guidelines did not require a showing of a contemporaneous awareness of the injury-producing event and its traumatic consequences. (See p. 932, *ante*.) More importantly, *Ochoa* did not involve a claim for medical malpractice. *Bird* distinguishes a layperson's perceptions of the conduct in the normal accident case from that involved in a claim for medical malpractice. In essence, a parent knows when his or her child is in need of medical attention but does not, in the eyes of the law, know of the injury-causing effects of that treatment.

■ "[A] rule permitting bystanders to sue for NIED on account of unperceived medical errors hidden in a course of treatment cannot be reconciled with *Thing*'s requirement that the plaintiff be aware of the connection between the injury-producing event and the injury." (*Bird, supra*, 28 Cal.4th at p. 921.) To do so would "impose nearly strict liability on health care providers for NIED to bystanders who observe emotionally stressful procedures that turn out in retrospect to have involved negligence." (*Ibid.*)

■ As suggested by the comments of the trial court, the circle of liability *Thing* sought to rein in would once again expand. One can envision a scenario where a "close relative" of the victim sitting at bedside may perceive

that the patient is suffering. Concerned and unsatisfied with the responses of the medical professionals in attendance, the relative goes "online" or to the library to research the symptoms. Now educated in the medical nuance, the relative suffers "emotional distress" and brings an action against the medical professionals. Permitting an NIED claim to go forward in such analogous circumstances would contravene *Thing*. "The merely negligent actor does not owe a duty the law will recognize to make monetary amends to all persons who may have suffered emotional distress on viewing or learning about the injurious consequences of his conduct." (*Thing, supra*, 48 Cal.3d at p. 668.)

■ Significantly, " ' "[t]he standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman." [Citations.]' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142], quoting *Landeros v. Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389].) As *Bird* noted, "courts have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event." (*Bird, supra*, 28 Cal.4th at pp. 917–918.) The objective layperson standard applicable in cases where a plaintiff seeks recovery for medical malpractice without expert testimony would likewise apply where one seeks to recover on a claim for NIED based on witnessing alleged medical malpractice.[3]

■ Even if courts were willing to recognize that only a specific class of nonlayperson bystanders could recover for NIED for observing the consequences of an injury-producing event, appellants have not alleged factually what "expertise" enabled them to understand that the medical treatment given their mother was inadequate. The allegation in their complaint that they are "experienced in the medical field" is conclusory and without factual support. Although given an opportunity, at no time during the hearing below on the demurrer did appellants offer to amend their complaint to allege facts clarifying this bare allegation, even though it was their burden to do so. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

---

[3] For example, when a plaintiff relies on the presumption of res ipsa loquitur to raise an inference of negligence it is sufficient to show that the act complained of normally does not occur in the absence of negligence. (Evid. Code, § 646, subd. (c); *Rimmele v. Northridge Hosp. Foundation* (1975) 46 Cal.App.3d 123, 129 [120 Cal.Rptr. 39].) In an action for medical malpractice, however, such a showing normally requires testimony from an expert to establish whether the medical condition would not occur absent someone's negligence. (*Blackwell v. Hurst* (1996) 46 Cal.App.4th 939, 943 [54 Cal.Rptr.2d 209].) Much the same principle applies in a claim of NIED arising from a claim of medical malpractice.

The trial court properly sustained the hospital's demurrer without leave to amend. The judgment is affirmed and costs on appeal are awarded to respondent.

Yegan, Acting P. J., and Coffee, J., concurred.