Filed 12/19/13  Haroutunian v. GMAC Mortgage CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HEDEYA HAROUTUNIAN, | B237722 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC052638) |
| v. | |
| GMAC MORTGAGE, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David S. Milton, Judge.  Affirmed in part, reversed in part and remanded with directions.

Mazur & Mazur, Janice R. Mazur and William E. Mazur, Jr.; Shaghzo & Shaghzo Law Firm, Armen Shaghzo for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Jon D. Ives, M. Elizabeth Holt and Kerry W. Franich for Defendant and Respondent.

_____

In this action against defendant GMAC Mortgage LLC (GMAC) alleging mortgage fraud and unfair business practices, plaintiff Hedeya Haroutunian appeals from a judgment entered after the trial court sustained a demurrer to her fourth amended complaint without leave to amend and granted a motion to strike references to punitive damages in the same complaint. In addition to challenging the rulings on the demurrer and motion to strike, Haroutunian contends the trial court abused its discretion in denying her motion for leave to amend her complaint to assert a cause of action against GMAC for promissory estoppel. We conclude Haroutunian has stated a valid cause of action for intentional misrepresentation (fraud and deceit) and prayer for punitive damages. We also conclude the trial court abused its discretion in denying Haroutunian leave to amend to assert a cause of action for promissory estoppel. Accordingly, we reverse the judgment in part and remand the matter for further proceedings.

## BACKGROUND[1]

In or about 1979, Haroutunian and her husband, who is now deceased, purchased a single family house in Glendale, California. About 30 years later, on April 8, 2010, Haroutunian's home was sold at a foreclosure sale.[2] Haroutunian filed this action five days after the foreclosure sale. She alleges the following facts.

Haroutunian fell behind on her mortgage payments after her husband passed away in 2008. In or about spring 2009, defendant GMAC began servicing Haroutunian's mortgage account on behalf of the entity which owned the interest in her account. Haroutunian's loan was secured by a deed of trust on the real property. On June 10, 2009, GMAC sent Haroutunian a letter stating that the total amount outstanding on

---

[1] In accordance with the standard of review set forth below, the background facts are taken from the operative fourth amended complaint and matters subject to judicial notice. Facts are attributable to the allegations of the fourth amended complaint unless another document is specified (e.g., exhibit attached to the complaint).

[2] Haroutunian and her family have lived in the house since she and her husband purchased it in 1979. At some point after the foreclosure sale, Haroutunian repurchased the house from a subsequent buyer.

2

Haroutunian's loan as of June 4, 2009 was $347,365.50. Haroutunian attached a copy of this June 10, 2009 letter as Exhibit 1 to her fourth amended complaint.[3] In late 2009, Haroutunian received a notice stating her mortgage account was in default. GMAC or its agent, ETS Services, LLC (ETS), the Trustee under the deed of trust, recorded a Notice of Trustee's Sale, indicating Haroutunian's real property would be sold at a foreclosure sale on February 8, 2010.

As alleged in her fourth amended complaint, Haroutunian "obtain[ed] two personal loans in order to pay off the default and bring the mortgage current." She also retained counsel to negotiate with GMAC regarding a pay-off of the past due amount. In a letter to Haroutunian dated January 22, 2010, GMAC stated it had updated its records to reflect that Haroutunian was represented by counsel and should not receive telephone communications regarding her account until that representation ceased. Haroutunian attached a copy of this January 22, 2010 letter as Exhibit 2 to her fourth amended complaint.

On January 28, 2010, ETS faxed a letter to Haroutunian's counsel stating that Haroutunian needed to pay $37,281.21 to GMAC in order to reinstate her account. Haroutunian attached this letter as Exhibit 3 to her fourth amended complaint. Haroutunian alleged in her fourth amended complaint that she "was prepared and willing to fully cure the default in January 2010 using the proceeds of the personal loan." On January 28, 2010, however, her counsel had a telephone conversation with an employee of ETS (GMAC's agent) during which ETS recommended Haroutunian cure the default by making installment payments.

Haroutunian's counsel and ETS agreed, during the January 28, 2010 telephone conversation, that the February 8, 2010 foreclosure sale would be canceled if Haroutunian made an immediate payment of $10,000 to GMAC, followed by five monthly payments of $8,713.42. This new monthly payment amount consisted of her

---

[3] We identify herein only those exhibits to the fourth amended complaint which are pertinent to our discussion of the issues on appeal.

regular monthly payment plus the remainder of the past due amount spread over five payments. As part of the January 28, 2010 telephone conversation, ETS told Haroutunian's counsel that GMAC or ETS would provide Haroutunian with a written payment schedule specifying the due dates of the five monthly payments. Haroutunian's counsel wired $10,000 to GMAC.[4]

Haroutunian did not receive a written payment schedule so she contacted GMAC multiple times "to clarify the monthly payments schedule." She did not receive a response to her inquiries until March 10, 2010, when her counsel received a letter from GMAC dated March 5, 2010. Haroutunian attached a copy of the March 5, 2010 letter as Exhibit 6 to her fourth amended complaint. In this letter, GMAC stated that the terms of the repayment plan required Haroutunian to make a payment of $10,000 on January 29, 2010, followed by payments of $8,713.43 on February 28, March 29, April 29, and May 29, 2010, and a payment of $8,713.44 on June 29, 2010. GMAC indicated it had not received the first $8,713.43 payment by February 28, 2010. GMAC's March 5, 2010 letter also listed the amount of the insurance premium as well as various fees assessed on Haroutunian's account.

As alleged in the fourth amended complaint, on March 13, 2010, GMAC purportedly mailed a letter addressed to Haroutunian and her deceased husband stating that GMAC had canceled the repayment plan due to Haroutunian's noncompliance and that default proceedings would resume. Haroutunian attached this March 13, 2010 letter as Exhibit 7 to her fourth amended complaint. Haroutunian alleges she did not receive this letter until GMAC produced it to her in this litigation during discovery. The letter

---

[4] In her fourth amended complaint, Haroutunian alleges she made the $10,000 payment on January 29, 2010, the day after her counsel negotiated the repayment plan with ETS. A copy of the wire transfer request form attached to her fourth amended complaint as part of Exhibit 4, however, indicates that Haroutunian made the $10,000 payment on January 26, 2010, two days before her counsel allegedly negotiated the repayment plan with ETS.

4

does not indicate that GMAC sent a copy of this March 13, 2010 letter to Haroutunian's counsel.

Unaware that GMAC had canceled the repayment plan, Haroutunian's counsel wired a payment of $8,713.43 to GMAC on March 19, 2010. GMAC accepted the payment. Haroutunian attached a copy of the wire transfer request form as part of Exhibit 4 to her fourth amended complaint. On March 22, 2010, Haroutunian's counsel mailed a letter to GMAC, dated March 20, 2010, stating that the repayment schedule listed in GMAC's March 5, 2010 letter differed from counsel's understanding of the agreement reached between the parties. Haroutunian attached a copy of her counsel's March 20, 2010 letter as Exhibit 8 to her fourth amended complaint. The March 20, 2010 letter states, in pertinent part:

"I am in receipt of you[r] letter dated March 5, received on March 10, 2010. Thank you for finally advising us of your repayment plan. However I am concerned about your scheduled payments as that is not my understanding. After the initial payment of $10,000.00, you were to forward a written confirmation of our agreement and the actual demanded amount as well as the schedule. The said payment was made on January 29. Having not heard from you, we contacted you several times and finally we received your March 5, letter."

In the March 20, 2010 letter, Haroutunian's counsel disputed GMAC's calculations regarding the total amount past due and the amount of the insurance premium, as set forth in GMAC's March 5, 2010 letter. Haroutunian's counsel also indicated that Haroutunian had made a payment of $8,713.43 and would make another payment in the same amount in April. GMAC did not respond to the March 20, 2010 letter. On April 5, 2010, Haroutunian's counsel sent GMAC a payment of $8,713.14.

5

Haroutunian attached a copy of the April 5, 2010 check as part of Exhibit 4 to her fourth amended complaint.[5]

On April 8, 2010, at about 10:00 a.m., individuals unknown to Haroutunian entered her gated property and informed persons in her house that her property was the subject of a foreclosure sale. Haroutunian was not given advance notice of the sale. Haroutunian immediately contacted her counsel who immediately contacted GMAC and ETS. On April 8, 2010, within 30 minutes after Haroutunian became aware of the sale, her property was sold to an entity called Samsara Apparel, LLC (Samsara). A person representing Samsara contacted Haroutunian and informed her that he had purchased the property for $680,000. According to the allegations of the fourth amended complaint, the amount Samsara paid for the property was "at least one million dollars short of the assessed value of the property and about $1.5 million short of the actual current price of the Property."[6]

On April 13, 2010, five days after the foreclosure sale, Haroutunian filed this action against GMAC. The next day, on April 14, 2010, GMAC mailed a letter addressed to Haroutunian and her deceased husband enclosing the April 5, 2010 check for $8,713.14. Haroutunian attached a copy of the April 14, 2010 letter as Exhibit 9 to her fourth amended complaint. This letter states, in pertinent part: "Enclosed please find attorney check number 2534 in amount of $8,713.14. These funds do not represent the full amount due to reinstate your account at this time. [¶] Your account has been transferred to our attorney to begin foreclosure proceedings. Additional fees and costs have incurred. If it is your intent to reinstate your account in full, please contact the attorney below for the reinstatement amounts. Only the correct amount in the form of

---

[5] It is not clear why Haroutunian's counsel sent a payment of $8,713.14, instead of the previously agreed upon amount of $8,713.43. Presumably the $0.29 change in amount was a mistake.

[6] Haroutunian named Samsara and its representative as defendants in her first amended complaint in this action. These defendants were dismissed from the action below and are not parties to this appeal.

certified funds will be acceptable." As set forth above, Haroutunian's real property was sold in a foreclosure sale six days before the date of this letter from GMAC.

On May 25, 2010, Haroutunian filed her first amended complaint, asserting causes of action against GMAC for breach of oral contract, intentional misrepresentation, negligent misrepresentation, declaratory relief, unlawful business practices, unfair business practices, unfair debt collection practices, breach of fiduciary duty, accounting, and unjust enrichment. On August 6, 2010, the trial court sustained GMAC's demurrer to the first amended complaint with leave to amend.

On September 7, 2010, Haroutunian filed a second amended complaint, asserting causes of action against GMAC for breach of contract, intentional misrepresentation, negligent misrepresentation, declaratory relief, unfair business practices and unjust enrichment. On December 3, 2010, the trial court sustained GMAC's demurrer to the second amended complaint with leave to amend as to the second cause of action for intentional misrepresentation and the fifth cause of action for unfair business practices, and without leave to amend as to the other causes of action. The court found GMAC's motion to strike portions of the second amended complaint was moot.

On December 20, 2010, Haroutunian filed a third amended complaint, asserting causes of action against GMAC for intentional misrepresentation and unfair business practices. The same day, she filed a motion for leave to amend her complaint to assert a cause of action for promissory estoppel, which GMAC opposed. She attached a proposed fourth amended complaint to her motion for leave to amend. On January 28, 2011, the trial court denied Haroutunian's motion for leave to amend her complaint. On March 11, 2011, the court sustained GMAC's demurrer to the third amended complaint with leave to amend.

Pursuant to the trial court's ruling granting her leave to amend, on April 15, 2011, Haroutunian filed a fourth amended complaint, asserting causes of action against GMAC for intentional misrepresentation and unfair business practices. On September 30, 2011, the trial court sustained GMAC's demurrer to the fourth amended complaint without

leave to amend and granted GMAC's motion to strike references to punitive damages in the fourth amended complaint.

On November 29, 2011, Haroutunian filed her notice of appeal. On December 9, 2011, the trial court entered judgment in favor of GMAC. We treat Haroutunian's notice of appeal as a premature appeal from the December 9, 2011 judgment. (Cal. Rules of Court, rule 8.104(d).)

As set forth above, Haroutunian challenges the trial court's rulings denying her motion for leave to amend her complaint, sustaining GMAC's demurrer to her fourth amended complaint without leave to amend, and granting GMAC's motion to strike references to punitive damages in the fourth amended complaint. She does not challenge the trial court's rulings on GMAC's earlier demurrers. Thus, the only causes of action at issue on appeal are the proposed cause of action for promissory estoppel in her proposed fourth amended complaint, and the causes of action for intentional misrepresentation and unfair business practices in the operative fourth amended complaint. We discuss in more detail below the allegations of the causes of action at issue and the arguments made in the relevant pleadings.

## DISCUSSION

### Standard of Review

We review the trial court's ruling on the motion for leave to amend the complaint for abuse of discretion. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486 ["'trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown'"].)

In reviewing the trial court's order sustaining the demurrer, "we examine the complaint de novo." (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th

8

859, 865.)  "'We also consider matters which may be judicially noticed.'"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse.  [Citation.]"  (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)

**Promissory Estoppel**

As set forth above, on December 20, 2010, Haroutunian filed her third amended complaint and a motion for leave to amend her complaint to assert a cause of action for promissory estoppel.  She attached a proposed fourth amended complaint to her motion which included the proposed cause of action for promissory estoppel.  Haroutunian challenges the trial court's denial of leave to amend.  We conclude the trial court abused its discretion in denying leave to amend.

"The elements of promissory estoppel are (1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promisee or a third person, (3) the promise induces action or forbearance by the promisee or a third person (which we refer to as detrimental reliance), and (4) injustice can be avoided only by enforcement of the promise.  [Citations.]"  (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 803.)

### Promise

In her proposed fourth amended complaint attached to her motion for leave to amend, and in the earlier versions of her complaint, Haroutunian alleged GMAC promised to cancel the foreclosure sale if Haroutunian made an immediate payment of $10,000 followed by five monthly payments of $8,713.43.  On or about January 29, 2010, Haroutunian wired the $10,000 payment and GMAC accepted it.  On March 19, 2010, Haroutunian wired the first of the five monthly payments of $8,713.43 and GMAC accepted it.  On April 5, 2010, Haroutunian sent GMAC a check for $8,713.14.  On April

9

8, 2010, Haroutunian's real property was sold at a foreclosure sale. On April 14, 2010, GMAC returned Haroutunian's check for $8,713.14.

GMAC argues Haroutunian cannot state a cause of action for promissory estoppel because she breached the promise she is attempting to enforce. GMAC asserts Haroutunian "readily concedes she failed to make the agreed-upon February payment." Nowhere in the record before us does Haroutunian concede—or allege in any version of her complaint—that the five monthly payments of $8,713.43 were to commence in February. She alleged in her proposed cause of action for promissory estoppel that the five monthly payments were to be made "in accordance with a written payment schedule to be provided" by GMAC.

As the record demonstrates, Haroutunian has never taken a contrary position as to when the payments were due. After Haroutunian's counsel received GMAC's March 5, 2010 letter stating Haroutunian had missed a payment of $8,713.43 due February 28, 2010, counsel responded with a March 20, 2010 letter explaining he believed the first monthly payment was due after GMAC provided the written payment schedule.

GMAC next argues, to the extent "the oral agreement in question obligated GMAC to provide a written payment schedule," the promise constitutes "an unenforceable agreement to agree." This argument is without merit. On a cause of action for promissory estoppel, "'To be enforceable, a promise need only be "'definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'"'" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 226 [bank's agreement to "'work with [Aceves] on a mortgage reinstatement and loan modification' if she no longer pursued relief in the bankruptcy court" was "a clear and unambiguous promise" for purposes of promissory estoppel cause of action].) "'[T]hat a promise is conditional does not render it unenforceable or ambiguous.' [Citation.]" (*Ibid.*)

In her proposed cause of action for promissory estoppel, Haroutunian alleged a clear and unambiguous promise: GMAC promised to cancel the foreclosure sale if Haroutunian made an immediate payment of $10,000 followed by five monthly payments

10

of $8,713.43 to be made "in accordance with a written payment schedule to be provided" by GMAC.

**Detrimental reliance**

In her proposed cause of action for promissory estoppel, Haroutunian alleged she "could have sought alternative arrangements to satisfy her loan obligations and maintain ownership of her home," if not for GMAC's promise that it would cancel the foreclosure sale if she made the six specified payments. GMAC argues "this type of vague and generalized theory of speculative detriment [is] insufficient to support a promissory estoppel claim." As set forth above, the detrimental reliance element of a promissory estoppel cause of action requires a showing that the plaintiff took some action or refrained from taking some action in reliance on the promise and was injured as a result. (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 803.)

The record demonstrates Haroutunian can allege detrimental reliance. In her operative fourth amended complaint, filed after the trial court denied her motion for leave to amend, Haroutunian alleges she "obtain[ed] two personal loans in order to pay off the default and bring the mortgage current, and "was prepared and willing to fully cure the default in January 2010 using the proceeds of the personal loan." She further alleges, on January 28, 2010, her counsel had a telephone conversation with an employee of ETS (GMAC's agent) during which ETS recommended Haroutunian cure the default by making installment payments. In fact, Haroutunian was able to make arrangements to secure the funding to repurchase her home from the subsequent buyer during the pendency of these proceedings.

To the extent Haroutunian did not adequately allege detrimental reliance in her proposed cause of action for promissory estoppel, the trial court should have allowed her an opportunity to allege additional facts. It is clear Haroutunian could have alleged sufficient facts showing detrimental reliance. In January 2010, Haroutunian was ready and able to pay off the past due amount on her loan in one lump sum. But GMAC promised to cancel the foreclosure sale if she instead made six installment payments. In

11

reliance on GMAC's promise, she did not pay off the past due amount on her loan in January, made three payments, and her home was sold at a foreclosure sale in April 2010.

**Reasonable and foreseeable reliance**

In her proposed cause of action for promissory estoppel, Haroutunian alleged facts showing GMAC should have reasonably expected Haroutunian would rely on GMAC's promise to her detriment.

Haroutunian made the $10,000 payment at the end of January 2010 and the foreclosure sale scheduled for February 8, 2010 did not occur. On March 5, 2010, GMAC mailed a letter to Haroutunian's counsel stating she had missed a payment due February 28, 2010. The letter did not indicate GMAC was canceling the repayment plan. On March 13, 2010, GMAC allegedly mailed a letter addressed to Haroutunian and her deceased husband—which Haroutunian denies she received—stating the repayment plan was canceled. GMAC did not send a copy of this letter to Haroutunian's counsel or otherwise inform Haroutunian's counsel that it had canceled the repayment plan, even though Haroutunian's counsel had negotiated and was administering the repayment plan on Haroutunian's behalf. On March 19, 2010 Haroutunian wired an $8,713.43 payment to GMAC and GMAC accepted it. On April 5, 2010, Haroutunian sent GMAC a check for $8,713.14. On April 8, 2010, Haroutunian's real property was sold at a foreclosure sale. On April 14, 2010, GMAC mailed Haroutunian's check back to her.

Based on these alleged facts, it was reasonably foreseeable that Haroutunian would continue to rely on GMAC's promise up to the time of the foreclosure sale. As discussed above, Haroutunian alleges, absent GMAC's problem, she would have made arrangements to pay off the past due amount on her loan before the foreclosure sale.

GMAC argues Haroutunian cannot allege reasonable and foreseeable reliance because any agreement to modify her mortgage is not enforceable unless it was memorialized in writing and signed by GMAC. (Civ. Code, § 1624; Civ. Code, § 2922 ["A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property"].) While the statute of frauds bars a cause of action for breach of contract, it does not bar a cause of action for

12

promissory estoppel. Based on GMAC's alleged conduct, as set forth above, Haroutunian can allege it was reasonably foreseeable that she would rely on GMAC's promise.

We find the trial court abused its discretion in denying Haroutunian leave to amend to assert a cause of action for promissory estoppel. Her allegations demonstrate "injustice can be avoided only by enforcement of [GMAC's] promise. [Citations.]" (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 803.) The reasons the trial court listed in its minute order for denying leave to amend are not supported by the record. The court indicated it believed GMAC's assertion that Haroutunian owed and missed a payment due on February 28, 2010, and therefore could not seek to enforce the promise. As discussed above, nowhere in the record before us does Haroutunian concede—or allege in any version of her complaint—that the five monthly payments of $8,713.43 were to commence in February. The court also indicated: "It appears the motion [for leave to amend] is [an] attempt to reargue what already has been decided." Because this was the first time Haroutunian had sought leave to amend to assert a cause of action for promissory estoppel, the court had not previously decided the issue.

Finally, the trial court indicated it was denying the motion for leave to amend because Haroutunian had not complied with California Rule of Court, rule 3.1324. This rule requires that the motion for leave to amend must "[s]tate what allegations in the previous pleading are proposed to be deleted, if any, and where, by page, paragraph, and line number, the deleted allegations are located" and "[s]tate what allegations are proposed to be added to the previous pleading, if any, and where, by page, paragraph, and line number, the additional allegations are located." (Cal. Rules of Court, rule 3.1324(a)(2) & (3).) Moreover, the rule requires that "[a] separate declaration must accompany the motion and must specify: [¶] (1) The effect of the amendment; [¶] (2) Why the amendment is necessary and proper; [¶] (3) When the facts giving rise to the amended allegations were discovered; and [¶] (4) The reasons why the request for amendment was not made earlier." (Cal. Rules of Court, rule 3.1324(b).)

13

Although Haroutunian essentially included the information required by rule 3.1324 in her memorandum of points and authorities in support of her motion for leave to amend, she did not submit a separate declaration setting forth this information. When she filed her reply brief, Haroutunian submitted a declaration from her counsel which included the information required by rule 3.1324. GMAC does not ask this court to affirm the denial of Haroutunian's motion for leave to amend based on noncompliance with rule 3.1324 and we decline to do so.

**Intentional Misrepresentation**

Haroutunian contends the trial court erred in sustaining without leave to amend GMAC's demurrer to her cause of action for intentional misrepresentation (fraud and deceit) in the operative fourth amended complaint. We agree.

"The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. [Citation.]" (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 792.)

In the operative fourth amended complaint, Haroutunian alleges, in pertinent part: "As alleged herein, on January 28, 2010, GMAC, by and through its agents, made affirmative misrepresentations to Plaintiff regarding cancellation of the foreclosure sale. GMAC's representatives informed Plaintiff that the payments would effectively cancel the foreclosure sale, thereby making false representations of fact regarding GMAC's intention to continue with the sale. From January 28, 2010 to April 8, 2010, GMAC further concealed facts regarding the rescheduling of the foreclosure sale to April 8, 2010. GMAC and its agents further represented that a payment schedule would be provided setting forth the payment due dates for the Repayment Agreement. GMAC represented, by letter dated January 22, 2010, that communications would be with Plaintiff's counsel, when in fact GMAC allegedly mailed a letter dated March 13, 2010 indicating resumption of the default proceedings directly to Plaintiff. [¶] . . . GMAC

14

made these representations regarding the status of Plaintiff's account and the foreclosure sale and concealed facts regarding the foreclosure sale with the intent to induce Plaintiff to make payments pursuant to the Repayment Agreement, all the while intending to foreclose on the Property. GMAC accepted Plaintiff's payments pursuant to the Repayment Agreement and induced Plaintiff to believe to her detriment that the foreclosure was indeed cancelled." Plaintiff alleges she is entitled to damages incurred in repurchasing the real property as well as punitive damages.

GMAC asserts, "Haroutunian's basic theory on appeal is that GMAC made an intentional misrepresentation by telling her attorney that it would *postpone* the foreclosure sale, while secretly intending to foreclose all along." (Italics added.) GMAC argues "the record conclusively indicates that GMAC" did not make a misrepresentation because it did in fact postpone the foreclosure sale from February 8 to April 8, 2010. We find GMAC's argument disingenuous. Haroutunian has alleged GMAC represented it would *cancel* the foreclosure sale, not just postpone it, if Haroutunian made an immediate payment of $10,000 followed by five monthly payments of $8,713.43 to be made in accordance with a written payment schedule to be provided by GMAC. GMAC did not cancel the sale and Haroutunian's real property was sold.

GMAC also argues the alleged misrepresentation lacks the requisite specificity and constitutes "at most an unenforceable agreement to agree." We rejected this argument above. The alleged misrepresentation is clear and unambiguous. We also rejected above GMAC's argument that the statute of frauds bars Haroutunian's causes of action. GMAC cites no authority supporting its proposition that Haroutunian may not state a cause of action for fraud absent a written agreement signed by GMAC memorializing the repayment agreement.

GMAC further argues Haroutunian has not alleged facts supporting the element of intent to deceive. We disagree. According to Haroutunian's allegations, when her counsel and GMAC negotiated the repayment plan on or about January 28, 2010, GMAC agreed to provide a written schedule for the five payments of $8,713.43. The parties agreed Haroutunian would begin making those five payments after GMAC provided the

15

schedule.  GMAC waited until March 5, 2010 to mail the payment schedule to Haroutunian's counsel.  GMAC asserted Haroutunian had missed a payment due February 28, 2010.  GMAC did not inform counsel it planned to cancel the repayment agreement or reschedule the foreclosure sale.  On March 13, 2010, three days after Haroutunian's counsel received the March 5, 2010 letter, GMAC allegedly mailed a letter addressed to Haroutunian and her deceased husband stating that it had canceled the repayment plan.  GMAC did not notify Haroutunian's counsel of the cancellation, and Haroutunian denies she received the March 13, 2010 letter.  Accordingly, on March 19, 2010, Haroutunian's counsel wired a payment of $8,713.43, which GMAC accepted.  GMAC did not notify Haroutunian or her counsel of the foreclosure sale scheduled for April 8, 2010.  On April 5, 2010, Haroutunian sent a check for $8,713.14 to GMAC.  On April 8, 2010, Haroutunian's real property was sold at a foreclosure sale.  On April 14, 2010, GMAC mailed the check back to Haroutunian with a letter stating, in pertinent part:  "Enclosed please find attorney check number 2534 in amount of $8,713.14.  These funds do not represent the full amount due to reinstate your account at this time.  [¶] Your account has been transferred to our attorney *to begin foreclosure proceedings*. Additional fees and costs have incurred.  If it is your intent to reinstate your account in full, please contact the attorney below for the reinstatement amounts.  Only the correct amount in the form of certified funds will be acceptable."  (Italics added.)

The foregoing alleged facts indicate GMAC did not cancel the foreclosure sale and had no intention of canceling the foreclosure sale, but intentionally led Haroutunian to believe it had canceled the foreclosure sale.  As discussed above, Haroutunian justifiably relied on GMAC's misrepresentation.

The trial court erred in sustaining without leave to amend GMAC's demurrer to Haroutunian's cause of action for intentional misrepresentation (fraud and deceit) in the operative fourth amended complaint.

16

**Unfair business practices**

Haroutunian contends the trial court erred in sustaining without leave to amend GMAC's demurrer to her cause of action for unfair business practices (Bus. & Prof. Code, § 17200) in the operative fourth amended complaint. We disagree.

To state a cause of action for unfair business practices under Business and Professions Code section 17200, a private plaintiff must allege she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323.) Haroutunian does not allege she fell behind on her mortgage payments as a result of any unfair business practice by GMAC. Instead she alleges "she lost her home" and "was required to enter into negotiations to buy it back at a significantly higher price than the outstanding loan balance due on the loan" as a result of GMAC's misrepresentations regarding the repayment plan. These misrepresentations are the alleged unfair business practices.

Haroutunian is seeking damages in this action and damages are not an available remedy on a cause of action for unfair business practices under Business and Professions Code section 17200. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1147.) Haroutunian's remedy on this cause of action would be restitution— "money or property acquired [by the defendant] through unfair practices." (*Id*. at pp. 1147-1148, citing Bus. & Prof. Code, § 17203.) She seeks the difference between the amount she paid the third party to repurchase her home and the amount she owed on her mortgage at the time of the foreclosure sale. That is damages, not restitution. Based on the allegations in her fourth amended complaint, there is no remedy available to Haroutunian on her cause of action for unfair business practices.

Haroutunian has not stated a valid cause of action for unfair business practices and has not demonstrated she can amend her complaint to state such a cause of action.

**Punitive Damages**

After sustaining the demurrer to the fourth amended complaint without leave to amend, the trial court granted GMAC's motion to strike references to punitive damages

17

in the operative fourth amended complaint. Haroutunian contends the court erred in granting the motion to strike.

To recover punitive damages "[i]n an action for the breach of an obligation not arising from contract," a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) "In determining whether a complaint states facts sufficient to sustain punitive damages, the challenged allegations must be read in context with the other facts alleged in the complaint. Further, even though certain language pleads ultimate facts or conclusions of law, such language when read in context with the facts alleged as to defendants' conduct may adequately plead the evil motive requisite to recovery of punitive damages." (*Monge v. Superior Court* (1986) 176 Cal.App.3d 503, 510.)

Haroutunian has alleged sufficient facts in the operative fourth amended complaint supporting her prayer for punitive damages on her cause of action for intentional misrepresentation. As discussed above, Haroutunian alleges GMAC falsely represented it would cancel the foreclosure sale, but had no intention of canceling the foreclosure sale. GMAC intentionally led Haroutunian to believe it had canceled the foreclosure sale. Haroutunian alleges she learned about the foreclosure sale on April 8, 2010, when strangers informed persons in her house that her property was the subject of a foreclosure sale. Her home was sold on April 8, 2010, within 30 minutes after she became aware of the sale.

The trial court erred in granting GMAC's motion to strike references to punitive damages in the operative fourth amended complaint.

18

## DISPOSITION

The portion of the judgment sustaining GMAC's demurrer to the second cause of action for intentional misrepresentation and granting GMAC's motion to strike references to punitive damages in the fourth amended complaint is reversed. The matter is remanded for further proceedings, and the trial court shall allow Haroutunian to file a fifth amended complaint adding a new cause of action for promissory estoppel. In all other respects, the judgment is affirmed. Appellant is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


MALLANO, P. J.


ROTHSCHILD, J.

19