Filed 3/14/23  Alikhani v. Azartash CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ABBAS ALIKHANI,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>MAJID AZARTASH,<br><br>    Defendant and Respondent. | G061020<br><br>(Super. Ct. No. 30-2020-01174168)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Law Offices of Stephen W. Berger, Stephen W. Berger; and Thomas Borchard for Plaintiff and Appellant.

Hochfelsen & Kani and Steven I. Hochfelsen for Defendant and Respondent.

Plaintiff Abbas Alikhani and defendant Majid Azartash were both members of a limited liability company that owned and operated a restaurant in Temecula. After the restaurant closed, the limited liability company ceased its operations. In winding up those operations, Alikhani paid the limited liability company's debts, liabilities, and expenses and thereafter filed the instant action against Azartash seeking his contribution toward those payments. The trial court sustained, without leave to amend, Azartash's demurrer to Alikhani's operative complaint on the ground Alikhani failed to allege sufficient facts to state a claim for contribution.

We affirm. Although Alikhani's operative complaint showed Azartash was a member of the limited liability company, it failed to allege facts showing he ever agreed, in writing as required by Corporations Code section 17703.04, subdivision (a), to be personally liable for any of that entity's debts, liabilities, and/or winding-up expenses. Because Alikhani failed to make any showing there was a reasonable possibility he could amend the operative pleading to state a cause of action, the trial court did not err by sustaining the demurrer without leave to amend.

SUMMARY OF ALLEGATIONS

The following summarizes the material allegations of Alikhani's operative pleading, the first amended complaint. In 2012, Masood Ghalami found a location in Temecula to open a restaurant. Ghalami was Alikhani's "good friend" who had many years of experience in the restaurant business. "[D]ue to business and financial reversals and difficulties," Ghalami did not have "the business or financial ability" to open a restaurant on his own. Ghalami therefore sought assistance from his mother-in-law, Linda Silcott, and Alikhani.

Alikhani initially decided not to get involved in Ghalami's venture, "but after persistent pressure" and based on Ghalami's "repeated promises and assurances that Alikhani's role, responsibility and financial exposure would be limited," Alikhani agreed

2

to help.  In 2012, Alikhani initially invested working capital in the amount of $5,000 in a limited liability company called Toscana, LLC (Toscana), which owned and operated what would become La Bella Vita restaurant (the restaurant).  Alikhani and Silcott (the latter as trustee of the Toscana LLC Holding Trust dated 8/1/12) each held a 50 percent interest in Toscana.  Ghalami signed a long term lease for the restaurant's premises for which Alikhani signed a guaranty.  (The first amended complaint alleges Alikhani was not personally liable under the guaranty because he signed it "only as an agent for Toscana, and not in [his] individual capacity" but also alleges he was "personally exposed . . . as a signatory on the Lease Guaranty.")  Also in 2012, the restaurant was built out using $240,000 in tenant improvement money from the landlord.  Azartash was the prime contractor for the construction.

The restaurant opened for business in early 2013 "to persistent financial pressure."  A liquor license had yet to be secured, Ghalami had grossly overestimated projected sales, and the restaurant's actual sales were insufficient to pay its expenses, particularly for payroll and food.  In addition, the eight-month rent-free period under the lease was coming to an end in May 2013, which would trigger a monthly rent obligation of $13,000 going forward.

Alikhani found a liquor license broker through whom arrangements were made for the restaurant to secure a liquor license (with Alikhani listed as licensee).  In May 2013, when money was immediately needed to pay for the liquor license else risk losing it to another buyer, Azartash paid at least $12,940 and otherwise worked with Alikhani to obtain the license on May 31, 2013.

In the following months, operational problems with the restaurant arose, leading to Alikhani and Azartash's disagreements with Ghalami regarding Ghalami's "insistence on taking money from the Restaurant despite [its] lack of sufficient sales and working capital" which caused Alikhani and Azartash to invest more of their own money each month to keep the restaurant operating.  From May until November 2013, Alikhani

3

contributed $125,000 to the restaurant, Azartash contributed $75,000, and Ghalami and his wife Cynthia Ghalami contributed $10,000.[1] (In 2014, Alikhani and Azartash invested additional funds in the amounts of $25,000 and $15,000, respectively; the Ghalamis did not make any further monetary contribution that year.)

At some point, Alikhani and Azartash also took issue with Ghalami's work hours, treatment of the restaurant's employees, and handling of expenses, as well as his conduct of "repeatedly overruling decisions" made by Alikhani and Azartash. In late 2013, it was agreed by all involved parties that Alikhani and Silcott would each cede a 10 percent interest in Toscana in favor of Azartash in consideration for his substantial financial contributions to it. Azartash thus became an individual member of Toscana with a 20 percent interest. It was agreed Alikhani, with Azartash, would have "full decision making authority . . . in all management and financial matters affecting Toscana until such time as Alikhani was no longer named on the alcoholic beverage license for the Restaurant, and was no longer personally exposed regarding the Restaurant legally and financially except as a signatory on the Lease Guaranty as an Agent of Toscana." It was further agreed unless the Ghalamis and/or Silcott were willing and able to contribute money to the restaurant equal to that contributed by Alikhani and Azartash, the Ghalamis would absent themselves from the restaurant, not engage in conduct that would obstruct or interfere with its operations, and seek a buyer to purchase Silcott's interest in Toscana.

After a dispute arose with the restaurant's successor landlord, the restaurant closed in July 2015 and Toscana thereafter ceased conducting business. As co-managers, Alikhani and Azartash "verbally agreed that to whatever extent winding up expenses of the Restaurant needed to be paid, that Alikhani would pay [them], and that Azartash would contribute to those expenses proportionate to Azartash's 20% interest in Toscana."

---

[1]  The first amended complaint alleges Silcott "was never involved in the management or operation of the Restaurant, and upon information and belief, never contributed any money to the Restaurant."

Since July 2015, Alikhani has engaged in winding up Toscana's affairs by liquidating its assets and paying third party creditors. At some point, Alikhani and Ghalami were sued on the lease by the restaurant's successor landlord. Ghalami defaulted and the trial court ruled against Alikhani after a bench trial. Judgment was entered in that case in an amount exceeding $400,000. While Alikhani's appeal from the judgment was pending, the matter was settled with Alikhani's payment of $300,000 to the successor landlord in December 2018.

In the course of winding up Toscana, Alikhani also paid the following expenses: (1) $82,229.54 for sales taxes and interest for the time period of June through September 2013 (paid to the California Department of Tax and Fee Administration after an audit; penalties were waived); (2) $22,752 to settle a lawsuit involving the former landlord; (3) $15,450 to the Internal Revenue Service; and (4) $55,000 for miscellaneous expenses, including payments to the meat company, the uniform company, and alcohol, beer, and wine vendors, for utilities, and for all court and attorney fees incurred by Toscana.

Alikhani "made every good faith effort to consult and work together with Azartash regarding all of the foregoing decisions, settlements, and payments, and requested that Azartash contribute funds to help Alikhani pay the continuing winding up expenses of Toscana, but Azartash refused and failed to communicate further with Alikhani and refused to contribute any money toward payment of the continuing winding up expenses of Toscana, leaving Alikhani to pay 100% of those Toscana winding up expenses [totaling in excess of $600,000] despite Alikhani only having a 40% interest in Toscana."

PROCEDURAL HISTORY

In December 2020, Alikhani filed a complaint against Azartash which contained a single claim for contribution. Azartash filed a demurrer to the complaint on

5

the grounds it failed to state facts sufficient to constitute a cause of action and was vague and uncertain. (Code Civ. Proc., § 430.10, subds. (e) & (f).) The trial court sustained the demurrer with leave to amend.

Alikhani filed a first amended complaint against Azartash[2] for contribution, citing Civil Code section 1432 and Corporations Code section 17701.07. In the first amended complaint, Alikhani alleged he sought "a determination by the Court that Azartash . . . is solvent and able to pay, and shall pay contribution to Alikhani as requested for the liabilities and winding up expenses incurred and owed by the Restaurant and Toscana and paid 100% to date by Alikhani in an amount according to proof, with interest, but believed to be at least $120,000 due from Azartash, i.e. the amount due being proportionate to Azartash's 20% interest in Toscana." (Boldface omitted.) Alikhani also sought costs, including attorney fees, as allowed by law.

Azartash filed a demurrer to the first amended complaint on the ground the contribution claim failed to state facts sufficient to constitute a cause of action because (1) Alikhani had not alleged any basis for joint liability between himself and Azartash, and (2) "based on matters judicially noticeable, the statute of limitations for such claim expired prior to the filing of this action." The demurrer was brought on the additional ground the contribution claim is vague and uncertain "in that [Alikhani] has not alleged the specific date of the judgment against him upon which he bases the claim, and therefore has not alleged that the claim for contribution falls within the statute of limitations for such claim."

In support of the demurrer, Azartash requested the court take judicial notice of a conformed copy of the second amended complaint filed and the judgment entered in

---

[2] In the first amended complaint, Alikhani alleged because Silcott and the Ghalamis are "penniless and judgment proof," he chose not to name them as defendants notwithstanding the fact they are "legally and factually liable to Alikhani for contribution."

6

*LIPT Winchester Road et al. v. Toscana LLC, et al.* (Super. Ct., Orange County, 2017, No. 30-2016-00849062).  The second amended complaint in that case was filed by the restaurant's successor landlord and contained a claim for breach of the lease against Toscana, and a claim for breach of the guaranty against Alikhani and Ghalami as individuals.  The successor landlord sought compensatory damages in excess of $300,000, reasonable attorney fees, and costs of suit.  On September 6, 2017, judgment was entered after a court trial against Ghalami (who had defaulted), Toscana, and Alikhani, awarding the successor landlord damages in the amount of $378,600 plus "[c]osts pursuant to cost memorandum."

Following a hearing on the demurrer to the first amended complaint in the instant case, the trial court issued a minute order stating:  "As more fully discussed on the record, demurrer sustained without leave to amend.  CCP § 875 (a) [judgment was not rendered 'jointly' against plaintiff and defendant; action was not in tort] and CCP § 877(a) and (c) [settlement not made 'before' the judgment but instead two years afterwards; alleged agreement was also oral]."


DISCUSSION

I.

GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] "'""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . .  We also consider matters which may be judicially noticed." . . .  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'"'  [Citation.]"  (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)


7

""""When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment . . . . "' [Citations.] "'The burden of proving such reasonable possibility is squarely on the plaintiff."' [Citation.]" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]' [Citation.]" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

II.

CONTRIBUTION ACTIONS UNDER CIVIL CODE SECTION 1432

"[T]he law of equitable contribution in California was developed primarily in cases decided from the late 1800's through the 1930's. The equitable principles established in those cases have remained unchanged to the present." (*Jans v. Nelson* (2000) 83 Cal.App.4th 848, 851 (*Jans*).)

Section 1432 of the Civil Code, upon which Alikhani bases his contribution claim,[3] provides: "Except as provided in Section 877 of the Code of Civil Procedure,[4] a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." An action to enforce the right of contribution under Civil Code section 1432 is

---

[3]    Alikhani also cites Corporations Code section 17701.07 in support of his claim, which generally provides in relevant part: "(a) It is the policy of this title and this state to give maximum effect to the principles of freedom of contract and to the enforceability of operating agreements. [¶] (b) Unless displaced by particular provisions of this title, *the principles of law and equity supplement this title*. [¶] (c) *Rules that statutes in derogation of the common law are to be strictly construed shall have no application to this title*." (Italics added.)

[4]    Section 877 of the Code of Civil Procedure does not apply here; Alikhani agrees.

8

governed by equitable principles. (*Jans, supra*, 83 Cal.App.4th at p. 855; see *Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 650, fn. 7 (*Jessup*) ["The right to contribution embodied in Civil Code section 1432 'rests upon principles of equity and natural justice'"].)

The appellate court in *Jans, supra*, 83 Cal.App.4th at page 851 explained the governing principles of contribution as follows: "Solvent limited partners who have guaranteed a debt of the partnership have an equitable duty of contribution when a fellow guarantor has satisfied the guaranteed debt. When the partner has guaranteed the partnership debt in his or her role as a partner (as opposed to a role as a manager, agent, creditor or other person affiliated with the partnership in some way), the guarantor's duty of contribution is presumed to be limited by his or her proportionate share of ownership of the limited partnership. In calculating the solvent partners' ownership interests, the court must disregard the ownership interests of any insolvent partners. Thus, absent some other agreement among the coguarantors, a solvent partner's equitable contribution will be proportionate to his or her adjusted percentage of ownership. We will refer to this as the partner's 'fair share' of the debt.

"Conversely, a partner who has signed a guarantee in his or her role as a partner and who then has fully or partially satisfied the guaranteed debt has a right of contribution from solvent partners who also have guaranteed the debt. The right of the guarantor to contribution is limited to the amount by which the guarantor's actual payment of the guaranteed debt exceeds his or her fair share. Thus, because more than one guarantor may have paid an amount greater than his or her proportionate share, the total fair-share liability of a coguarantor may be greater than the amount any single guarantor is entitled to receive in an equitable action for contribution. The point of the equitable action for contribution is to relieve the unfairness visited upon the guarantor who has paid more than his or her fair share; the point is not to make sure each guarantor pays a fair share."

9

## III.

### THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE FACTS SHOWING AZARTASH WAS PERSONALLY LIABLE FOR ANY OF THE ALLEGED OBLIGATIONS FOR WHICH ALIKHANI SEEKS CONTRIBUTION

In the first amended complaint, Alikhani seeks contribution from Azartash for payments Alikhani made to settle Toscana's debts, liabilities, and winding-up costs, in an amount commensurate with Azartash's ownership interest in Toscana. The first amended complaint alleges Toscana is "a former and now out of business and de facto dissolved Limited Liability Company" that was "organized and existing under the laws of California, and was formerly duly authorized to do business in California with its former principal place of business in Temecula, Riverside County." The first amended complaint alleges that because Azartash was a member of Toscana with a 20 percent interest, he must contribute to the amount paid by Alikhani on Toscana's behalf in an amount commensurate with that ownership share.

Unless an exception applies, however, a limited liability company's debts, obligations, or other liabilities, whether arising in contract or tort, "are solely the debts, obligations, or other liabilities of the limited liability company to which the debts, obligations, or other liabilities relate." (Corp. Code, § 17703.04, subd. (a)(1).) "They do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager for the limited liability company." (*Id.*, § 17703.04, subd. (a)(2); see Fotenos, et al., Cal. Practice Guide: Pass-Through Entities (The Rutter Group 2022) ¶ 6:209 ["The major advantage of the LLC is that, like a corporation, the owners may limit their liability to their ownership interests [as] LLC members are not liable for LLC debts, obligations or other liabilities except in limited circumstances"].)

The first amended complaint does not allege that any exceptions to the general rule of limited liability apply here and Alikhani does not argue otherwise in his

appellate briefs. For example, there are no allegations Azartash (1) is "subject to liability under the common law governing alter ego liability" (Corp. Code, § 17703.04, subd. (b)); (2) engaged in any tortious conduct (*id.*, § 17703.04, subd. (c)); (3) signed a written guaranty of the obligations (*ibid.*); (4) agreed to be obligated personally for Toscana's debts, obligations, and liabilities and that agreement "is set forth in the articles of organization or in a written operating agreement that specifically references this subdivision" (*id.*, § 17703.04, subd. (e)); (5) was responsible for paying required contributions to the State Unemployment Fund on behalf of Toscana and willfully failed to do so (Unemp. Ins. Code, § 1735); or (6) upon the dissolution of Toscana, had control or supervision of, or responsibility for paying Toscana's sales and use taxes and willfully refused to pay them (Rev. & Tax. Code, § 6829).

In short, the first amended complaint does not allege facts that would support finding Azartash personally liable and subject to a contribution action for amounts paid by Alikhani to settle Toscana's debts, liabilities, and winding-up expenses.

Alikhani argues he stated a claim for contribution because he alleged Azartash agreed to contribute to Toscana's winding-up expenses proportional to his 20 percent interest in Toscana, albeit orally. It is upon this alleged oral agreement Alikhani argues Azartash is jointly responsible for Toscana's debts. Alikhani argues the trial court "never cited any authority for [the court's] erroneous conclusion that Civ. Co. §1432 or Corp. C. §17701.07 require a writing" for Azartash's agreement to be enforceable. (Boldface and underscoring omitted.)

But as discussed *ante*, pursuant to subdivisions (c) and (e) of Corporations Code section 17703.04, members of a limited liability company do not become personally liable for its obligations unless they enter into a "*written* guaranty of the obligations or similar contract with a third party" or if they otherwise "agree in the articles of organization or *written* operating agreement." (Fotenos, et al., Cal. Practice Guide: Pass-Through Entities, *supra*, at ¶ 6:211.) Alikhani has not alleged the existence

11

of any such writing in support of his claim. He does not cite (much less allege) any other basis for pursuing Azartash for contribution. Notwithstanding that *Alikhani* might be personally liable for some or all of Toscana's debts by falling into one or more of the exceptions to the limited liability rule (e.g., because he signed a written guaranty for the lease, his name was on the liquor license, he might have been responsible for paying Toscana's taxes, etc.), he has failed to allege facts showing Azartash was also personally liable or otherwise statutorily responsible for any part of those debts, liabilities, and winding-up expenses.

In his opening brief, Alikhani argues the transcript of the hearing on the demurrer shows the trial court had "erroneous perceptions" and reached incorrect legal conclusions in ruling on the demurrer. For example, Alikhani argues the trial court (1) misquoted the allegations of the first amended complaint and failed to consider the first amended complaint as a whole; (2) incorrectly asserted there was no such thing as a "claim" for contribution but only a right of contribution unavailable here because it only arises when there is a judgment entered jointly against two or more defendants in a tort action or when a settlement is reached before a verdict is rendered or judgment entered; and (3) erroneously concluded Alikhani's claim must be brought under Code of Civil Procedure sections 875 and 877.

As discussed *ante*, however, in our de novo review of the order sustaining the demurrer, we do not review the trial court's rationale. (See *Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.* (2022) 83 Cal.App.5th 1062, 1067 ["'We are not bound by the trial court's stated reasons . . . ; we review the ruling [on the demurrer], not its rationale'"].) Whether the trial court misunderstood or misapplied the relevant law or facts in sustaining the demurrer is therefore immaterial to our review and conclusion that for the reasons discussed *ante*, the demurrer was properly sustained.

12

Because we conclude there are insufficient facts to state a claim for contribution against Azartash, we do not need to address whether the claim also fails as barred by the relevant statute of limitations or as vague and uncertain.

IV.

LEAVE TO AMEND

Alikhani argues the trial court erred by sustaining the demurrer without leave to amend, thus depriving him the opportunity to further amend his pleading. When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Alikhani has not argued the existence of facts, beyond those alleged in his first amended complaint, that would be sufficient to state a cause of action for contribution. Indeed, at oral argument, Alikhani's counsel did not argue Alikhani should be granted leave to amend his contribution claim. Instead, Alikhani's counsel argued the allegations of paragraph 19 in the first amended complaint show that, notwithstanding the sole "contribution" claim pleaded, this case is really a case of an alleged breach of an oral agreement between two individuals (Alikhani and Azartash), that is entirely independent of their status as members and co-managers of the limited liability company Toscana. As such, counsel's argument continues, Alikhani should have been granted leave to amend to plead a claim for breach of contract.

Paragraph 19 of the first amended complaint states: "Due to a dispute with the new Landlord of the Restaurant who had purchased the shopping center in Temecula where the Restaurant was located, the Restaurant was closed in or about July 2015. As Co-Managers of the Restaurant, Alikhani and Azartash verbally agreed that to whatever extent winding up expenses of the Restaurant needed to be paid, that Alikhani would pay

13

those expenses, and that Azartash would contribute to those expenses proportionate to Azartash's 20% interest in Toscana."

Alikhani's counsel's proposed breach of an *oral* contract cause of action would not withstand demurrer because such a contract would be invalid under California's statute of frauds, codified at Civil Code section 1624. That code section provides in relevant part: "(a) The following contracts are *invalid*, *unless* they, or some note or memorandum thereof, are *in writing* and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in [Civil Code] Section 2794." (Italics added.)

Alikhani has neither pleaded facts, nor argued he could plead facts, showing Civil Code section 2794 provides any exception to the requirement Azartash's alleged agreement to assume Toscana's and/or Alikhani's debts must be in writing to be enforceable. In his reply brief, Alikhani identified subdivisions (2) and (4) of Civil Code section 2794 as "pertinent" to this appeal, but fails to explain how he has or can allege facts showing either contains an applicable exception.

Civil Code section 2794 provides, in relevant part: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: [¶] . . . [¶] (2) Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor and the person in whose behalf it is made, his surety; [¶] . . . [¶] (4) Where the promise is upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

Alikhani has not alleged facts, and does not argue he can allege facts, showing either he "part[ed] with value, or enter[ed] into an obligation" in consideration

14

for Azartash's alleged oral agreement to contribute toward Toscana's and/or Alikhani's debts (see Civ. Code, § 2794, subd. (2)), or that Azartash made such an agreement "upon a consideration beneficial to [him]" (*id.*, § 2794, subd. (4)).

At oral argument, Alikhani's counsel argued consideration, within the meaning of Civil Code section 2794, supported the parties' alleged oral agreement. Specifically, he argued Azartash benefited by his agreement to contribute to Toscana's and/or Alikhani's debts incurred in Toscana's wind-up process because "those are the expenses that could come back to bite both of those gentlemen." But as discussed *ante* in section III of the Discussion, no facts show Azartash had any exposure for being held personally liable for those expenses. (See Corp. Code, § 17703.04, subd. (a)(1), (2).) Consequently, as no facts show consideration supported Alikhani's alleged oral agreement to contribute toward expenses he was not otherwise responsible for paying, Civil Code section 2794, subdivisions (2) and (4) are inapplicable. Consequently, that Azartash allegedly entered into an oral contract with Alikhani is fatal to a breach of contract claim as matter of law.[5]

Because Alikhani has failed to meet his burden of showing a reasonable possibility he could amend the first amended complaint to state a cause of action, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

---

[5] For the first time in his reply brief, Alikhani asserts, without providing supporting reasoned argument, Azartash should be equitably estopped from asserting the statute of frauds. Even if Alikhani's tardy and undeveloped argument is not forfeited, it does not support granting leave to amend here. An estoppel to plead the statute of frauds "may be applied where necessary to prevent either unconscionable injury or unjust enrichment. [Citation.]" (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 27; see *Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068 ["""The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances"""].) Alikhani has not alleged or proposed facts showing unconscionable injury, unjust enrichment, or the perpetration of any fraud in this case.

15

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


DELANEY, J.