Filed 7/1/24; certified for publication 7/23/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FARZAM SALAMI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LOS ROBLES REGIONAL<br>MEDICAL CENTER,<br><br>    Defendant and Respondent. | 2d Civil No. B327348<br>(Super. Ct. No. 56-2021-<br>00560715-CU-BC-VTA)<br>(Ventura County) |

Farzam Salami appeals from the trial court's orders sustaining Los Robles Regional Medical Center's demurrers to claims in his first and third amended complaints (FAC and TAC, respectively) without granting leave to amend. Salami contends the court erred when it: (1) sustained the demurrer to the breach of contract and declaratory relief claims in his FAC after finding that Los Robles's emergency services fee (EMS fee) was for services that were "actually rendered," and (2) sustained the demurrer to the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), Consumers Legal Remedies Act (CLRA; Civ.

Code, § 1750 et seq.), and declaratory relief claims in his TAC after concluding that Los Robles had no duty to disclose its intent to charge an EMS fee. We affirm.

FACTUAL AND PROCEDURAL HISTORY[1]

On August 8, 2020, Salami received emergency services at Los Robles. Prior to receiving those services, Salami signed a conditions of admission contract (COA). Pursuant to the terms of the COA, Salami agreed to pay for the services "actually rendered" to him, as listed in the hospital's chargemaster.[2]

Los Robles billed Salami $31,565.90 for its services, a total that included a "Level 5" EMS fee of $5,923.25. This fee was disclosed in the chargemaster. Los Robles later discounted Salami's bill to $3,156.59. Salami paid an unspecified portion of the discounted bill, allegedly including a portion of the EMS fee. He has not paid the remainder.

Salami received emergency services at Los Robles again on October 5 and December 25, 2020. Los Robles again charged EMS fees for each of these visits. Salami claims he would have sought less expensive treatment elsewhere had he known he would be charged these fees.

Salami sued Los Robles in December 2021 for breach of contract and declaratory relief, challenging Los Robles's practice of charging an EMS fee without his agreement. In his FAC,

---

[1] The facts are taken from Salami's FAC and TAC, which we accept as true in reviewing the trial court's orders sustaining Los Robles's demurrers. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

[2] A "chargemaster" is a hospital's schedule of charges billed to a patient for a given item or service. (See Health & Saf. Code, § 1339.51, subd. (b)(1).)

2

Salami alleged Los Robles's COA only allowed the hospital to charge for services "actually rendered" to the patient. He further alleged that EMS fees "are not fees for services actually rendered," but are instead fees that "cover [Los Robles's] general operating, administrative, and overhead costs." Salami contended Los Robles was not permitted to charge EMS fees under the terms of the COA.

Los Robles demurred to the FAC. The trial court sustained the demurrer, finding that the FAC did not state a breach of contract claim because it neither alleged "that Salami ha[d] substantially performed [his] part of the" COA by paying for services rendered nor did it allege that he was excused from paying for those services. Additionally, Los Robles substantially performed its duties by providing Salami with emergency services, triggering the requirement that he pay in full—something he had not done. Both the breach of contract claim and the derivative declaratory relief claim thus could not be cured by amendment.

Salami requested leave to amend his complaint to assert causes of action for violations of the UCL and CLRA and a non-contract-based declaratory relief claim. The trial court granted his request. In his TAC, Salami challenged Los Robles's "practice of charging emergency care patients a separate [EMS fee] without any notification of its intent[] to charge a prospective emergency room patient such a [f]ee . . . and without any agreement to pay for such separate [f]ee." He alleged that Los Robles gave "no notification or warning" that it charges an EMS fee. He further alleged he was unaware of Los Robles's intent to charge the fee; it was not disclosed on signage in the emergency

3

room, during the registration process, in the COA he signed, or in any other manner.  And at no point did Salami agree to pay it.

Los Robles demurred to the TAC.  The trial court sustained the demurrer without granting Salami leave to amend as to all three causes of action, finding that Los Robles had no duty to disclose the EMS fees before treating Salami in the emergency room.  (Citing *Saini v. Sutter Health* (2022) 80 Cal.App.5th 1054 (*Saini*) and *Gray v. Dignity Health* (2021) 70 Cal.App.5th 225 (*Gray*).)  It entered judgment in Los Robles's favor.

DISCUSSION

*Standard of review*

When the trial court sustains a demurrer, we independently determine whether the plaintiff's complaint states a cause of action.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)  We reasonably interpret the complaint, "reading it as a whole and its parts in their context."  (*Ibid*.)  When the court denies leave to amend, we decide whether the plaintiff has shown a "reasonable possibility" that the defects in the complaint can be cured by amendment.  (*Ibid*.)  The burden of proving such a possibility is "squarely on the plaintiff."  (*Ibid*.)

*Demurrer to the FAC*

Salami contends the trial court erred when it sustained Los Robles's demurrer to the breach of contract and declaratory relief claims in his FAC because the EMS fee the hospital charged covered "general overhead, operational, and administrative costs" rather than services "actually rendered."  The elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th

4

811, 821.)  But here, Salami did not allege that he performed his duties under the COA or was excused from doing so, nor did he allege that Los Robles failed to substantially perform its duties under the contract.  Without these elements his breach of contract claim fails.  The trial court therefore properly sustained the demurrer to that claim and the derivative declaratory relief claim in his FAC.

*Demurrer to the TAC*

Salami contends the trial court erred when it sustained Los Robles's demurrer to his TAC because, under the UCL and CLRA, the hospital had a duty to disclose its EMS fee.  Several recent cases have discussed this exact issue.  Three, including two relied on by the trial court, have held that no such duty exists (see *Moran v. Prime Healthcare Management, Inc.* (2023) 94 Cal.App.5th 166, review granted Nov. 1, 2023, S281746 (*Moran*); *Saini, supra,* 80 Cal.App.5th 1054; *Gray, supra,* 70 Cal.App.5th 225), while two have reached the opposite conclusion (see *Naranjo v. Doctors Medical Center of Modesto, Inc.* (2023) 90 Cal.App.5th 1193, review granted July 26, 2023, S280374; *Torres v. Adventist Health System/West* (2022) 77 Cal.App.5th 500).  We believe *Moran, Saini,* and *Gray* were correctly decided, and respectfully disagree with *Naranjo* and *Torres.*

As the *Moran* court explained: "The Payers' Bill of Rights, effective July 1, 2004, and codified at [Health & Safety Code] section 1339.50 et seq., was adopted to 'provide patients, health plans[,] and health care purchasers with more information about charges for hospital care.' " (*Moran, supra,* 94 Cal.App.5th at p. 175, review granted.)  "As adopted, hospitals were required to[:] (1) 'make a written or electronic copy of its charge description master available, either by posting an electronic copy of the

5

charge description master on the hospital's Internet Web site, or by making one written or electronic copy available at the hospital location' [citation], and (2) 'post a clear and conspicuous notice in its emergency department, if any, in its admissions office, and in its billing office that informs patients that the hospital's charge description master is available.' " (*Ibid.*)

"The Payers' Bill of Rights [also] included other requirements in furtherance of its goal of price transparency." (*Moran*, *supra*, 94 Cal.App.5th at p. 176, review granted.)  For example, "hospitals were . . . required to file their chargemasters annually with the Office of Statewide Health Planning and Development (OSHPD), and to list their 25 most common outpatient procedures and the average prices with OSHPD, which publishes that information on its website." (*Ibid.*) "Additionally, at the request of a person without insurance, hospitals must provide written estimates of expected charges." Emergency services are excepted from the Payers' Bill of Rights estimate requirement, however.  (*Moran*, at p. 176.)  This exception "reflects a careful balancing of transparency on the one hand and not discouraging uninsured patients from seeking necessary emergency care on the other." (*Ibid.*)

"[F]ederal law applicable to hospitals participating in Medicare . . . [similarly] prohibits delaying treatment of an emergency room patient to inquire about payment or insurance coverage." (*Moran*, *supra*, 94 Cal.App.5th at p. 176, review granted.)  It "also requires tax-exempt hospitals to have policies that prohibit 'the hospital facility from engaging in actions that discourage individuals from seeking emergency medical care, such as by demanding that emergency department patients pay before receiving treatment for emergency medical conditions.'

[Citation.]" (*Ibid.*) None of these provisions " 'require that hospitals post any signage or make any statement at the emergency department regarding the cost of emergency care,' " however. (*Ibid.*)

The trial court properly sustained Los Robles's demurrer to Salami's TAC. As to the UCL claim, "state and federal governments have thoroughly considered patients' need[s] for price transparency about hospital charges" and have concluded that "[a] hospital's duty to list, post, write down, or discuss fees it may or may not charge an emergency room patient starts and ends with its duty to list prices in the chargemaster." (*Moran, supra*, 94 Cal.App.5th at p. 186, review granted.) Los Robles fully complied with this requirement. Salami's challenge to the hospital's "policy of not providing additional signage or other warnings about the EMS fee [thus] does not state a claim for unfair, unlawful, or fraudulent conduct within the UCL." (*Ibid.*) Concluding otherwise would be " 'at odds with the spirit, if not the letter, of the hospital's statutory and regulatory obligations with respect to providing emergency medical care.' " (*Ibid.*)

We reach the same conclusion regarding Salami's CLRA claim. The CLRA imposed on Los Robles no duty to disclose the EMS fee beyond including it in the chargemaster, and the hospital made no oral promise to further disclose the fee. (*Moran, supra*, 94 Cal.App.5th at p. 180, review granted.) The CLRA also did not require Los Robles " 'to disclose the EMS [f]ee by posting additional signage in its emergency rooms.' " (*Moran*, at p. 183.) " 'There [was thus] no withholding of information that is provided on the hospital's chargemaster.' " (*Id.* at p. 187, alterations omitted.)

Salami complains that this conclusion implies a "safe harbor" for Los Robles's failure to disclose the EMS fee in signage beyond the chargemaster. We disagree. Concluding that the hospital had no duty to post additional signage alerting patients to the EMS fee—and that doing so "would interfere with the statutory and regulatory requirements that hospitals provide emergency care without first addressing the costs for care or the patient's ability to pay"—is different than implying a safe harbor. (*Saini, supra*, 80 Cal.App.5th at p. 1065; see also *Moran, supra*, 94 Cal.App.5th at p. 184, review granted.)

"[T]he California Legislature, the United States Congress, and numerous rulemaking bodies have already decided what pricing information to make available in a hospital's emergency room. Just as importantly, they have decided what *not* to include in those requirements." (*Moran, supra*, 94 Cal.App.5th at p. 186, review granted.) It is not up to this court to disturb the balance rulemakers have struck. The trial court correctly sustained Los Robles's demurrer to Salami's TAC.[3]

---

[3] We deny Los Robles's request to take judicial notice of its chargemaster and list of charges for its most common outpatient procedures, filed January 26, 2024, because it is not necessary for our resolution of this appeal. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 21.) Los Robles's motion for leave to file a supplemental brief and its request to take judicial notice of an online press release from the Office of the Attorney General, both lodged June 5, 2024, are also denied. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.  Los Robles shall recover its costs on appeal.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

9

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

Carpenter Law, Gretchen Carpenter; Law Office of Barry Kramer and Barry L. Kramer for Plaintiff and Appellant.

King & Spalding, Glenn Solomon, Paul R. Johnson, Amanda L. Hayes-Kibreab and Ariana E. Fuller for Defendant and Respondent.

Filed 7-23-24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FARZAM SALAMI,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>LOS ROBLES REGIONAL<br>MEDICAL CENTER,<br><br>   Defendant and Respondent. | 2d Civil No. B327348<br>(Super. Ct. No. 56-2021-<br>00560715-CU-BC-VTA)<br>(Ventura County) |

THE COURT:

     The opinion in the above-entitled matter filed on July 1, 2024, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in judgment.

_____

YEGAN, Acting P. J.      BALTODANO, J.      CODY, J.